BARKETT, Circuit Judge,
specially concurring:
I agree that Love is precluded from contesting his five-year term of supervised release because he invited the district court to impose that part of his sentence. Nonetheless, the present appeal draws our attention to serious confusion about the proper classification of criminal contempt for sentencing purposes. Thus I would address the question,[1] and hold that crimi *1158 nal contempt, as an offense sui generis, cannot be branded a Class A felony in every instance.
*1157 [COUNSEL]: ... I am thinking about another way to resolve the dilemma, your Honor, is what I’m saying.
THE COURT: All right.
[COUNSEL]: We sentence[] him to time served and impose two years of supervised release....
*1158 The government argues that criminal contempt is properly classified a Class A felony because 18 U.S.C. § 3559(a) provides a statutory framework for the classification of offenses based upon the maximum authorized sentence, and that this framework applies even when even when a particular offense lacks a specifically named statutory maximum. Mail fraud, for example, is undoubtedly a Class C felony even though — or indeed, precisely because — the corresponding statute, 18 U.S.C. § 1341, sets a maximum prison term of 20 years and does not specifically authorize supervised release. But the government’s theory falters on this very analogy. However different may be individual instances of mail fraud, the substantive offense — the elements which make mail fraud criminal by law — are always the same, whereas the offense of criminal contempt encompasses a vast array of possible underlying substantive offenses. As at least one Court has recognized, “[n]o ceiling is imposed on the sentence for Class A felonies because Congress views all such felonies as extraordinarily serious crimes. Criminal contempts, in contrast, include a broad range of conduct, from trivial to severe.” See United States v. Carpenter, 91 F.3d 1282, 1284 (9th Cir.1996).
Under the government’s interpretation, the relatively petty offense that resulted in Love’s contempt conviction — petty enough, at least, for Love to have received a mere 45-day prison sentence — could have been punished with life imprisonment if the trial court, in its discretion, wished to impose that penalty. Such an absurd sentence would raise serious proportionality concerns under the Constitution. See Atkins v. Virginia, 536 U.S. 304, 311, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (“it is a precept of justice that punishment for crime should be graduated and proportioned to [the] offense.”) (citing Weems v. United States, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910)). There is no reason why Title 18 must be read to permit such a constitutionally suspect result: “where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter.” Jones v. United States, 529 U.S. 848, 857, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000). Similarly, there is no reason why Title 18 must be read to permit results that are, if not unconstitutional under the Eighth Amendment, patently absurd. See In re International Administrative Services, Inc., 408 F.3d 689, 707-08 (11th Cir.2005) (interpreting a federal statute so as to avoid an “absurd result”); see also Regions Bank v. Provident Bank, Inc., 345 F.3d 1267, 1276 (“the Supreme Court has repeatedly held that ‘[i]f possible, [a court] should avoid construing [a] statute in a way that produces ... absurd results.’ ”) (citing Dewsnup v. Timm, 502 U.S. 410, 427, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992)).
In United States v. Carpenter, the Ninth Circuit successfully avoided a constitutionally feeble or absurd reading of the criminal contempt statute. Like the instant case, Carpenter involved a defendant who appealed his sentence for criminal contempt, consisting of light incarceration and several years suspended release. Like Love, defendant Carpenter argued that contempt should be classified based upon the sentence actually imposed; because Carpenter’s contempt violation would have been a “petty” offense under this approach, he argued, like Love, that the court was not authorized to impose supervised release at all. Id. at 1283. The government advanced in Carpenter the same argument it raises before this *1159 Court — namely, that all criminal con-tempts are Class A felonies by virtue of the fact that no maximum penalty is indicated by statute. Id. at 1284.
The Carpenter Court rejected both positions, however, holding that criminal contempt should be classified for sentencing according to the applicable Guidelines range for the most nearly analogous offense. Id. at 1285 (holding that where the Guidelines range was six to 12 months for the underlying offense, the contempt should be classified as a “Class A misdemeanor”). With regard to the government’s argument, the Court said that “[i]t would be unreasonable to conclude that by authorizing an open-ended range of punishments to enable courts to address even the most egregious contempts appropriately, Congress meant to brand all contempts as serious and all contemnors as felons.” Carpenter, 91 F.3d at 1284 (citing Frank v. United States, 395 U.S. 147, 149, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969) (failure to establish maximum sentence for contempt may reflect Congress’s “recognition of the scope of criminal contempt”) and U.S.S.G. § 2J1.1 comment n. 1 (rejecting any guideline range for criminal contempt “[b]e-cause misconduct constituting contempt varies significantly.”)).
Although it is true that Carpenter was decided when the Sentencing Guidelines were mandatory, the logic of the decision is not impaired by the Guidelines’ recent fate. As the Ninth Circuit explained, the Guideline ranges are a useful and reasonable basis for classifying particular instances of criminal contempt because they are “directly linked to the severity of the offense[, ...] providing] the best analogy to the classification scheme set out in 18 U.S.C. § 3559.” Id. at 1285. That is to say, the Carpenter approach avoids the absurd result of branding all criminal contempts Class A felonies, while simultaneously achieving, or at least approximating, the intent of Congress. Thus Carpenter's reasoning presumably could survive even in the absence of the Guidelines themselves; in such case, a sentencing court would look to the most closely analogous offense for which federal law mandates or recommends a maximum sentence.
I observe that this proposed resolution precisely mirrors the joint recommendation contained in Love’s plea agreement but rejected by the district court. In that agreement, the United States and the defendant urged the court to formulate the “sentence to be imposed” by reference to the Sentencing Guideline’s determination of the base offense level for “the most analogous offense.”

. Although this Court normally declines to address the existence of error where an alleged error has been invited, it is not compelled to do so. See, e.g., Glassroth v. Moore, 335 F.3d 1282, 1289-90 (11th Cir.2003) (adopting Tenth Circuit’s holding on eviden-tiary claim but concluding "in any event” that alleged error was invited); Ford ex rel. Estate of Ford v. Garcia, 289 F.3d 1283, 1295 (11th Cir.2002) ("declining] to review for reversible error” where error was invited) (emphasis added); United States v. Hansen, 262 F.3d 1217, 1248 (11th Cir.2001) ("Under the invited error doctrine, we will generally not review an error induced or invited by a party ... ”) (emphasis added).